Welcome back. Nice to see you. If I may reserve five minutes. Sure. Michael Rubin for the plaintiffs. This case is different from the other cases because this is the only case that was actually decided on the merits. This is a case where the threshold issue is whether the district court erred as a legal matter in granting summary judgment to CVS based on a rote counting of tasks, 26 tasks, set forth in an employer's description of tasks for a particular position without weighting those tasks, without determining which are most important, without determining how much time the plaintiff spent on any of those tasks. He did this because of his particular interpretation of the wage order. That's correct. Now, tell me why we should not certify this important question. It certainly would be beneficial to have a definitive ruling by the Supreme Court as to the meaning of the wage order. Our position here is that given the statutory construction arguments we made and the fact that this decision was so egregiously wrong because it claimed of all the possible interpretations an unweighted counting of factors that says to say so. Who gets to say so? I mean, is it our place to say so or is it the California court's place? Well, you know, we have cases that say even if it's clear as a matter of comedy, we should give the state court the first crack at it. Right. But in Abdullah most recently, which involved the construction of nature of the work, and in the other cases we cited in our supplemental briefs, this Court determined that it, applying the usual rules of statutory construction, could decide the issues itself. And then there were other cases where this Court did certify and the California Supreme Court declined certification. Well, they declined it. They declined it. That's right. And whether the – if the Supreme Court grants certification, then this Court's task will be easier in deciding this case and the next one. If the Court declines certification, then this Court will have to decide what it believes the California Supreme Court would likely do when faced with these issues. We don't have a court of appeal decision either, do we? State appellate decision. We don't. The Rite-Aid case may at some point, but the briefing was just completed on November 22nd. So I believe that we should argue this case as if Your Honors are going to make the ultimate, which you are, with or without certification. If you decide to certify it and get the benefit of a California Supreme Court ruling, so much the better. I'm just trying to figure out if there's any good reason we shouldn't. It's an open question. It's an important question. It's the kind of question that could evade the State court because of the peculiarities of CAFA cases getting moved here. I mean, it seems to me there are so many arguments in favor of certification and really no good reason not to that I see. I understand, Your Honor. And we understood that from the question. And I believe that I should probably address other questions or make arguments to help Your Honor in the event the court doesn't certify, unless you want to set up for re-argument at some later point. But, okay, in this case, I understood the argument to be that you're saying that 14A requires seats any time a particular task permits the use of seats. Doesn't almost every job have tasks that can be done while sitting? Right. And that's not actually our position. Was it at that point? No. Because it says reasonably. And it's the reasonably permits the use of seats that allows the court to consider the duration and the frequency of a given task. In this case, Nakia Kilby spent 90 percent of her time doing one job at the register station, which is why we thought this was a case that it wasn't necessary to ask the Supreme Court for certification. Your Honor points to a more difficult case, a more difficult merits issue. We believe that will eventually be decided based on whether a job reasonably permits the use of seats, which considers duration and frequency, and also takes into account the remedial goals of the statute. Right. So if you have a job where you may have to pop up occasionally or you may have to take some papers or take some fabric or return a product to the aisle occasionally, if it would promote the health and comfort benefits to allow you to sit during periods of time, you're in a stationary position at a fixed workstation, particularly in a case like this where the company has, in fact, accommodated pregnant workers and other workers with physical problems that prevent them from standing all the time, then it's our position that a reasonable construction is that the trier of fact, because it's ultimately a factual issue, may determine that, yes, that position does reasonably permit the use of seats. It doesn't mean they have to sit all the time. They can sit. They can stand. But they have to have the seats made available to them, provided in the language of the statute. So, no, it's not. Go ahead. You go ahead. It's not every passing or ephemeral task. Workers don't, as the argument went, have to carry chairs along with them. But if you're spending 90 percent of your time at a register performing the same function, that as she says, she only has to stand up for a short percentage of time. And her conclusions were supported by the ergonomics expert, by plenty of declarations. You can't grant summary judgment based on that. There's got to at least be a factual question that a trier of fact would say, yes, those duties do reasonably permit the use of seats. And it's that same legal error that permeates the ‑‑ that's why the classification has to be reversed, because it's a per se abuse of discretion to deny ‑‑ I'm sorry, Justice. It's my understanding, and you can correct me if I'm wrong, that's kind of what you did on my last question. I was trying to get you to come along, but you wouldn't. It's my understanding in this particular situation that some of the putative class members haven't suffered any injury at all. In fact, they spend less than a majority of their time performing the tasks that reasonably permit the use of seats. I thought that's what the district court was suggesting, because they don't suffer the same injury. The ‑‑ it has never been our position that a majority of the tasks have to be performed, have to be seating allowed for the statute to trigger. The judge said at one point there has to be a majority or there has to be many. Well, that's what I thought he was suggesting. Yes. Given what he was suggesting about his nature of the work and reasonably permits interpretation. Absolutely right. That's what he was suggesting, that we've got to at least have a majority of the time. Right. Because in this particular situation, some of the putative class members didn't do that, that this wasn't a good class. That's right, and we're saying that's legal error. That if, in fact, the California Supreme Court were to tell you it's a majority of tasks unweighted, you take the 26 tasks, and if there are 14, you get seats. If there are 12, you don't. I don't know what they would do about 13. Then under that analysis, this class certification decision was not an abuse of discretion. Our point is to arbitrarily say a majority or many, two times in the same opinion, and not to weight them, just to say, here they are, here's a list, each one, acknowledging that Ms. Kilby didn't even perform all of those 26 tasks, that is not either a sufficient basis for granting summary judgment against her, and it's certainly not a permissible basis for denying class certification, because he has effectively prejudged the merits in a way that's indefensible under the language of the wage order. Well, but didn't the district court find that differences between the tasks of CVS employees and differences between store layouts precluded a finding of commonality? And just to sort of, you know, like good cross-examination brings it back, isn't that a factual determination subject to deference, just like we argued in the last case? Sure, sure. If he applied the correct legal standard, we would be, it would be a finding that would be entitled to deference, just as in the last case. But it is a per se abuse of discretion under this circuit's law and every circuit law for a court to apply the wrong legal standard. And you don't give a district court the benefit of the doubt as to what the findings would have been under the correct legal standard if the incorrect legal standard is applied. You send it back for a do-over. This case has to be reversed and remanded for reconsideration, not based on an unweighted evaluation of the tasks. There are, for example, there are so many things he didn't even address in this case. There are the point-of-sale transaction records. We know precisely how much time people spent at the cash registers, because CVS, like most modern companies, has people punch in and punch out. Every transaction indicates who the person is, how much time they spent. There's a lot of records that would allow us to determine, not many, majority, but whether the amount of time during each separate pay period, because remember, PAGA provides penalties on a pay period by pay period basis. So for a plaintiff to prevail as to a pay period, she or he only needs to show that at some point during each two-week period, assuming a two-week pay period, the work that person performed reasonably permitted the use of seats. So if the transaction records show that there was one day that they spent several hours doing the same thing over and over again at the cash register, that should be sufficient to entitle that person, no matter what else they did during the pay period. So PAGA, 75 percent goes to the State and 25 percent goes to the — That's correct. And so how do the lawyers get paid? The lawyers sometimes in PAGA cases apply under 2699G, I believe, which is a statutory attorney's fees provision. Sometimes the lawyers seek fees under 1029.5 of the Code of Civil Procedure for a case in the public interest. There have been different ways in the Ham Oil case and the Aguiar case, which we cited that we were paid based on the PAGA statutory provisions. Your judge said you could bring a representative action, right, as opposed to a class action. That's right. The California Supreme Court has said that as well. What's the difference? Correct or different? We don't know. And that's one of the reasons that these cases come on class certification basis. There is no clear explanation yet in the California Courts of Appeal, the Supreme Court, exactly how you would do it. The California Supreme Court made clear in Arias that you can proceed under PAGA either on a representative basis or a class action basis or both. Would you be ahead of the game in doing it as a representative action and not having to get mired in these complicated class action issues? Well, we think that we would be mired perhaps in more complicated issues as to what does a representative action entail, what sort of proof is required. It may or may not require some of the same issues. We thought it would be a lot easier for the district court judges if they were adjudicated under Rule 23 or in state court under the state court counterpart because there at least we know the rules, we know the procedures, and no one's going to undo the whole process at the end. Are those subject to removal, the representative actions? Yes. This court has recently decided in the PAGA case yes there. Well, I know everyone's – If the amount of controversy is sufficient either under diversity or Catholic, I'm sorry. Well, I know everyone's concerned about delay here, but if we want to – I'm not sure that delay certifying the issue would really – if they say no, we'll know that relatively soon. If they say yes, it will be this term. And I only hearken back to the original Walmart case, how long that took in this particular circuit that I think we could be faster either way. And perhaps the circuit would respect whatever decision that we make, depending on the certification or the non-certification, as opposed to getting mired in the – if you look at the original Walmart, what that story was – I mean, I reported every year in an update for about eight years waiting for Walmart to be decided. There will be some delays. They won't be interminable delays. Whether they help or not, we may have a reasonable disagreement. Eventually, when it comes back to this court, the result should be a reversal of denial of class certification because the wrong legal standard was applied. I did ask to reserve five minutes. I see I'm down below, too, if I could answer Judge Smith's question. You're down below, too. The thing that worries me is I kind of agreed with the district court of a holistic approach in determining the nature of the work. I looked at the plain language of the statute. I thought it unambiguously supported the holistic approach. Even I looked at the regulatory history. I thought it doesn't say I'm wrong on the holistic approach. Tell me why I'm wrong. I mean, I read your brief, but I look at the statute, the plain language of it. I just have a tough time understanding. And then after I get there, I didn't see anything wrong with this 50 percent, the majority of the time situation. And to me, that's the issue that I've either got to give to the Supreme Court of California to deal with or I've got to decide myself. All right. Given that approach, we obviously aren't going to fight too hard against certification. But let me suggest there are two ways to look at a holistic approach. Let's start with Judge Anello's way of looking at a holistic approach. Right. That's just counting. That's counting tasks. That's not looking at what anyone actually does. That's looking at how the employer describes the job and how many subdivided tasks the employer happens to divide it into. Twenty-six is an arbitrary number. These same number of tasks could be 50, 40, 12, 11. It doesn't serve the purposes at all. If there were to be a true holistic assessment, it would have to evaluate what someone actually does and the extent to which seating would reasonably permit it. Should you be allowed to look at other tasks? The main reason that doesn't make any sense, and we go through and we break down this actual language. I know you've read that. But the reason it doesn't make any sense is because it would mean that the same person performing the same job the exact same way in the exact same workstation would be entitled to seating if during other parts of the day they had no other tasks, but would not be entitled to seating if during a different part of the day they had one or two tasks that required standing. It would mean that an employer could deprive someone of standing simply by adding some ‑‑ I'm sorry, deprive someone of seating simply by adding one or two standing tasks of the majority. And there's an irrationality there that ties into the historical development, the original language of the wage order. But where you have the, we gave the example of the bookkeeper, the checkup person, the seamstress, and the security guard. The security guard who spends all afternoon sitting looking at the video screen, but in the morning does rounds. The question should be when that person is performing a core function at the video screen, sedentary, is there any reason why, whether you call it viewing holistically or not, that person while at the screen should be deprived of a seat because of what was assigned to that person in the morning. Wrap it up if you would. Finish your thought. And if you're going to look at it holistically, what that means to us is you look at the job and you consider all functions over the course of the day, if you think that's appropriate, and then you decide does that job reasonably permit the use of seats. And when you conduct that analysis, it's the same analysis at a different time, right? Then you look at if it's the security guard, okay, his job includes walking around in the morning and looking at the video screen in the afternoon, does that job reasonably permit the use of seats? Yes, because for a significant chunk of time all he's doing is looking at a screen. There's no reason he can't be provided a seat. So you could call that a holistic assessment. You could consider that an evaluation of the other factors, but you're focusing on what the person is doing for a significant chunk of time, and you would come out the same way, and you could call that a holistic assessment, I believe. Thank you. Thank you. Good morning. Good morning, Your Honors. Tim Long for CVS. Let the record reflect that I am standing. You can sit if you need to, but you'll have to come to the side so we can see you. Fair enough, Your Honor. May I address the question you asked with regard to the interests of California? This is actually a fairly easy question to answer, but I would hasten to add that if you're going to attend the bus that way, I want to be on the bus. The reason it's easy is because virtually every court that has passed upon this language has interpreted it the same way that Judge Anello has. Second, if you look at the state of number one, which courts have done that? So we've cited in our supplemental briefing all the courts that have followed this. California Supreme Court? Not the California Supreme Court. California Court of Appeal? Not the California Court of Appeal. That's what matters here, isn't it? Not necessarily, Your Honor. Not necessarily? Nope. We would submit that if you looked at the landscape and you had district courts ruling in different ways, then it would matter. But here you have virtual uniformity of all the courts. So you don't have a duty to figure out what the California Supreme Court would say? Oh, I think you do. Okay. And if I may, look at the history of the wage orders and look at how the agency that was charged and is charged with enforcing this wage order will look at it. If you look at the history of this, there has not been a history of enforcement. In fact, to the contrary. It's undisputed, but the DLSE has said that 14A does not apply in this situation. It applies in those situations where people typically sit during their jobs. They do not apply in a mercantile setting in a store. Well, you know, but it's kind of like the Alien Tort Statute. No one ever used that forever. And then plaintiff's lawyers started using the Alien Tort Statute, and it had to work its way all up through the U.S. Supreme Court. You know, I mean, the seating cases are the issue du jour. So that's it. You know, just because no one thought of it before, it doesn't mean that it isn't relevant at this point. Fair enough. Then we go to Judge Alsup, who in the Garvey case asked the DLSE, how would you interpret and enforce this statute or this regulation? And what did the DLSE say? Essentially enunciated a test that is just what Judge Anello. Look at the facts and circumstances. Take a reasonable approach. Take into account the job functions performed by all of the individuals. Take into account the business judgment of the employer and how and why the employer defined the job the way it did. So against this backdrop, you have the agency, by the way, in whose shoes the plaintiff in a Paga case is supposed to stand in. But see, I'm pretty sure if ultimately the employer says, I want people ready and standing and looking at attention at all times because they look, you know, ready to spring and they look more like they want to help you, that everyone's legs are falling off. And, you know, I'm pretty sure that that might not, even if that were their policy, it might not withstand scrutiny at some point. Well, I would say, one, a different case than what we have here. But two, what that raises is could an employer ever employ somebody to stand? Could you say, I want to engage you and pay you to stand? That is your job. And I would submit that, yes, an employer could. Now, we could argue about what the facts are. If they were working for the Secret Service and protecting the president, they probably wouldn't get to sit in a lounge chair. But, you know, that's the, you know, but there might be other jobs that would fall in a different category. I agree. This job, which we have a range of duties that Judge Anello looked at, and looked at, and let me, I want to break two things down here. Certification first. What the California Supreme Court has to say with regard to the standard of a 14A doesn't matter because Judge Anello did not apply a holistic standard when he denied class certification in this case. He looked at how this regulation, the lens you look through it, is an individualized analysis. Then he looked at normal 23A and 23B3 factors and the evidence that we submitted that showed the variations in the way people perform their job, the existing conditions in which they perform the job, which varied store to store, within stores, and the like. And he used just basic federal rules in determining that certification would not be appropriate. The standard about whether it's holistic or not was not even discussed in his certification. So that part of the case doesn't, you don't need the California Supreme Court case. Okay. Now, with regard to the summary judgment. That would be a little more trouble from my standpoint. And this is what I'm looking at. What support do we have for the district court's ruling on summary judgment if the majority of an employee's assigned duties require standing, the nature of the request requires standing? Why doesn't a jury get to decide, using this holistic approach, whether the overall nature of the job allows sitting? So then you have to step back and you have to look at the evidence that was submitted to the court on summary judgment. And what do we have here? We have admissions from the plaintiff that she could not perform many of her job duties while seated. You're not, this is summary judgment. You're emphasizing facts that would be helpful to you. She submitted affidavit that she spent 90% of her time at work operating the cash register. And she said that operating the cash register reasonably permitted the use of a seat. Why is that not enough to get past summary judgment? Because it begs the issue about what was she doing while she was cashiering. If you look at the evidence that we submitted with regard to health. It seems to me that that's just one more time where if we take, if I'm on summary judgment, I've got to have the facts as best I can present for the plaintiff. I put down every fact. 90% of her time is working, operating a cash register. And it would reasonably help her to have a seat. Now you can argue, well, she doesn't sit all the time and all this stuff. But that doesn't get you past summary judgment. Summary judgment is I gave her every benefit of the doubt here. And Judge Adello did. That she spent 90% of her job, according to her declaration, cashiering, again begs the question about what she was doing when she was cashiering. And it doesn't address the undisputed fact of the admission that she made that many of those job duties that she was performing could not have been performed without seating. Third, when she says in her opinion that if she was allowed to sit it would reasonably permit things, that trumps entirely what the employer's business judgment here, which everyone agrees, the DLSE agrees, the court agreed, that that business judgment in terms of the design of the job, the expectations, the training that she was provided, is a reasonable factor to take into account. And whether it reasonably permitted her, in her opinion, also begs the question, again, how she performed her job duties. If I understand correctly, the judge said that 14b applies to her and not 14a. Is that right? Yeah. When you get right down to it, Your Honor, what the judge said is looking at 14a and 14b, 14a doesn't apply. By inference, the only part of this act should be 14b. This isn't a 14b case. And he held 14a and 14b are mutually exclusive. Dichotomous was the word that he used. Well, I'll read it to you. When both sections are given full and independent effect, 14 establishes a dichotomous approach for employers to follow based on the nature of the work involved. The sections are mutually exclusive. Fair enough. Okay. Is there any, I don't see any California authorities cited for that. Again, not the labor board, not the courts, not anybody. That's Judge Manella speaking. And his interpretation, again, is consistent with every other district court that has ruled on this matter. It's consistent with the DLSC's approach as enunciated in its response to Judge Alsop's request. And it's consistent with the historical interpretation of the DLSC, which the DLSC said 14a doesn't apply in these situations. So, again, if you have a situation, the backdrop of which is a lot of people disagreeing, and principally the enforcement agency taking a different view, then I could well understand the concern the court might have with regard to, let's get the Supreme Court in here. But here the enforcement agency, again, in whose shoes the plaintiff sits, has said, we look at the facts and circumstances, we take a reasonable approach, we take into account the employer's judgment in how the employer defined the job. Why the employer defined the job in that way? And here there is no challenge, but with regard to the rationale of CVS in designing the job in the way it did had some basis. Well, I think what Kilby was arguing on that point was that employers will just add extraneous job duties to their employee job descriptions in order to avoid having to provide seats. So if the employee spends the vast majority of their time cashiering, does it really matter whether the other tasks they have? I think that's what Kilby is saying, that if we accept your argument, that's what employers are going to do, sort of a gotcha. Well, I might look at this case as a gotcha in a different way, but it wouldn't be in this situation, because Judge Anello's test, the DOSC's test, would take that into account, in looking at people, how they actually performed their job. And again, let me stress, just because somebody is cashiering doesn't mean that one cashiers the same way. The declarations that we submitted demonstrated that people do even cashiering in different ways. And here, what do we know about Ms. Kilby on her motion for summary judgment? She admitted that many of the job functions that she performed could not be performed unless she was seated. So we don't have those issues, if you will. Is it inconceivable we could find that there's too much variation from cashier to cashier, so class certification is properly denied, but that there were fact questions regarding her individually that precluded summary judgment? Is that possible? Yes, it is, Your Honor, but not on this record. I do think that, to borrow the word of Mutually Exclusive, you have two different motions. On certification, as I said, the record is absolutely clear. It was a variation in the way people did their jobs, where they did their jobs, what have you, regardless of whether the standard is holistic or not. That stands on its own two feet. When you go over now to the motion for summary judgment, we think Judge Noll got it right, just as the DLSC has got it right in this situation. You take a holistic approach. You look at the job as a whole to determine the nature of the work, and you look at the job as a whole to determine whether a seat is reasonably permitted. And when you look at that, summary judgment was appropriate in this case. I have no questions. Okay. Thank you very much, Your Honor. Mr. Rubin, you used up your time. We're going to see you again. So if you, on the next case, if you want to say something else on this one, if you'd do it briefly, please. Perhaps I should just address quickly the business judgment argument that was raised for the first time. Obviously, if an employer's business judgment were allowed to be determinative, there would be no seating cases because they all arise in cases where the employer has exercised a business judgment. But someone has to stand. The DLSC amicus brief makes clear at page four to five that an employer's business judgment is not controlling. The PAGA, the legislature in PAGA, created, I'm sorry, the IWC in the wage order section 17 created an exemption in section 17 that allows an employer to be excused from the obligations in a case where it would work great hardship and it wouldn't interfere with the goals and purposes of the statute. We then go back to the history, and we point out that if you go back to 1919, the wage order originally said in the judgment of the commission, that is, the Industrial Welfare Commission, the right to seating is not to be determined by the employer. It is to be determined by the courts and the commission. That's what the DLSC agrees. Certainly in the trier of facts, determination of what is reasonable and whether a job reasonably permits the use of seats, it can consider the actual functionality of what someone does. That's where it is relevant. Thank you. This case is submitted.
judges: Silverman, Callahan, Smith